UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BRITTANY ANDERSON;
and SHILENNA ANDERSON,

    *Plaintiffs,*                    CASE NO.:

v.

DICK'S SPORTING GOODS, INC.,

    *Defendant.*     /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Brittany Anderson ("**B. Anderson**") and Shilenna Anderson ("**S. Anderson**") file this action against Dick's Sporting Goods, Inc. as follows:

### INTRODUCTION

1. Plaintiffs are mother and daughter. While shopping at a Dick's Sporting Goods in Plantation, Florida, Defendant called the police because Plaintiffs were two "black females putting a lot of things in their cart" who "were going to steal[.]" April 2, 2024, Police Report, attached hereto as Exhibit "A". That is, Defendant called the police because Plaintiffs were shopping.

2. This is an action for discrimination in violation of 42 U.S.C. § 1981.

### PARTIES

3. Plaintiff **B. Anderson** is a resident of Broward County, Florida.

4. Plaintiff **S. Anderson** is a resident of Broward County, Florida. She is B. Anderson's mother.

5. Defendant is a Delaware corporation with its principal place of business in Allegheny County, Pennsylvania. Defendant is one of the largest sporting goods retail chains in

the world and operates stores throughout the United States. Defendant operates Store No. 668 located at 801 S. University Dr., Plantation, FL 33324 ("**Store 668**").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 42 U.S.C. § 1981.

7. This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

8. Pursuant to 28 U.S.C. § 1391, venue is proper in this district because Defendant is subject to personal jurisdiction in this District and because the acts occurred in this District.

## GENERAL ALLEGATIONS

9. S. Anderson has several grandchildren and likes to buy them athleticwear and sporting goods.

10. On April 2, 2024, at approximately 11:50 a.m., Plaintiffs went shopping at Store No. 668. They had both shopped at this store multiples times before this day.

11. They grabbed a shopping cart and began meandering around the various departments of the store. They started in the women's department, then headed over to the children's department to pick out outfits.

12. At one point, B. Anderson asked an employe named Brittany ("**Employee Brittany**") if they had a certain size of a product that was not on the rack and then continued shopping while the employee went to check. A little while later, she saw Employee Brittany talking to another employee. B. Anderson followed up with Employee Brittany who advised they did not have the size she asked about. B. Anderson continued shopping in the women's department.

13. Around this time S. Anderson went to the men's department and picked out some Adidas outfits.

14. A few minutes later Plaintiffs met back up and continued shopping together. Multiple of Defendant's employees asked them if they needed assistance when they were together and when they were apart. Plaintiffs declined.

15. While in the shoe department, they inquired about the size availabilities of several types of shoes and were told that the store did not have them. They were assisted by one of Defendant's employees, who was very hesitant to hand them any shoes. Plaintiffs ultimately found a few pairs they found suitable and continued perusing various departments in the store and making decisions about what to purchase.

16. Several of Defendant's employees were wearing headsets. Plaintiffs noticed that many were watching them from around various clothing racks and displays as they shopped.

17. While shopping, Plaintiffs also noticed a police car sitting in front of the store's entrance, which was visible from where they stood in the store.

18. When heading back to the front of the store, they passed the women's department where they noticed a nicely dressed man in a tie had been following them. B. Anderson asked if he worked at the store. He said that he did not work at the store and continued talking on his phone in a soft voice.

19. Plaintiffs felt increasingly uncomfortable.

20. B. Anderson then identified another outfit in the women's section. Around this time, Plaintiffs saw the nicely dressed man talking to a few of Defendant's employees, including Employee Brittany.

21. Plaintiffs then noticed a police officer come in the store and look directly at them.

22. S. Anderson said to her daughter what had become obvious: "They called the cops on us."

23. Plaintiffs decided to leave—even though there were more things that they needed to buy (including outfits and shoes for B. Anderson's nieces and nephews and S. Anderson's grandchildren).

24. We now know S. Anderson was right. Roberto Veloso ("**Veloso**"), Defendant's Operations Manager for Store 668, called the Plantation Police Department on Plaintiffs within approximately 10 minutes of Plaintiffs entering the store.

25. Veloso told the dispatch (Cathy L. Smith) that two black women were "placing lots of things inside of the[ir] cart" and that he felt that they "may steal." He further stated that he had not seen anything concealed. Ms. Smith informed him that the police department is not dispatched for this type of thing, but Veloso told her to "just send the police." *See* April 2, 2024 Calls for Service Report, attached hereto as Exhibit "B."

26. Officer Giovanni Goodlett responded to Veloso's call. Ex. A.

27. When he arrived, Veloso told the officer that he believed Plaintiffs were going to steal items from Store 668. *Id*. at 2.

28. Officer Goodlett asked Veloso why he thought that Plaintiffs were going to steal items they were placing in their cart. Veloso stated, "well they are [two] black females putting a lot of things in their cart, and when I asked them if they need help, they did not say anything." *Id*.

29. To his credit, Officer Goodlett told Veloso that "just because they are black, placing items in their shopping cart, and did not want his help does not mean they are stealing." *Id*. Officer Goodlett then informed Veloso on the criteria needed to report shoplifting to ensure "that this [did] not happen again." *Id*.

30. When Plaintiffs approached the register, they saw Officer Goodlett (who had momentarily exited the store) walk back into the store toward Plaintiffs. He stopped short, turned around, and waited for them at the store's front entrance.

31. B. Anderson said to the cashier that it seemed like the police officer was looking at them and asked if they called the police on them. The cashier, Xavier, indicated he did not know.

32. At 12:50 p.m., Plaintiffs paid more than $1,200 for the items they selected and began to exit Store 668.

33. As Plaintiffs were leaving the store with their goods, Officer Goodlett approached them and explained that he was there due to a call from Defendant that they were suspected of illegal activity.

34. Plaintiffs were deeply upset by what they experienced while simply trying to shop.

35. Defendant's conduct directly interfered with Plaintiffs' ability to shop at Store 668.

36. Plaintiffs would have purchased more goods from Store 668 that day and on later dates, but for the racism they experienced (being profiled, harassed, pursued around the store, accused of engaging in criminal conduct, watched, and ultimately approached by a police officer).

37. Defendant's conduct directly prevented Plaintiffs from shopping in a manner that white shoppers enjoy.

38. Plaintiffs have never returned to Store 668.

## COUNT I –VIOLATION OF 42 U.S.C. § 1981

39. Plaintiffs repeat and reallege Paragraphs 1 through 38 as if fully set forth herein.

40. In operating a sporting goods store for the general public, Defendant extended to Plaintiffs an offer to accept a contract.

41. Plaintiffs accepted that offer and shopped at Store 668

5

42. Defendant refused to honor its contract with Plaintiffs by preventing them from being able to purchase all the goods they intended to purchase and shop in the manner enjoyed by white citizens.

43. But for Plaintiffs' race, Defendant would not have engaged in such conduct.

44. Plaintiffs were discriminated against because of their race.

45. By discriminating against Plaintiffs because of their race, Defendant denied Plaintiffs the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981).

46. Defendant acted with malice or with reckless indifference to Plaintiffs' federally protected rights.  Defendant's management, including through its Operations Manager, knowingly countenanced, approved, and engaged in the racial discrimination complained of.

47. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damages including emotional distress, humiliation, loss of dignity, and other damages.

48. Plaintiffs are entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## **REQUEST FOR RELIEF**

Plaintiffs respectfully request the Court enter judgment in his favor as follows:

a. Compensatory damages resulting from Defendant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

b. Punitive damages to punish Defendant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

c. Pre-judgment and post-judgment interest;

  d. An award of costs and reasonable attorneys' fees; and

  e. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all claims.

Dated: September 20, 2024,      Respectfully submitted,

                 By: */s/ Christopher S. Prater*
                    Christopher S. Prater
                    Florida Bar No.: 105488
                    cprater@pollardllc.com

                    Jonathan E. Pollard
                    Florida Bar No.: 83613
                    jpollard@pollardllc.com

                 **Pollard PLLC**
                 401 E. Las Olas Blvd., #1400
                 Fort Lauderdale, FL 33301
                 Telephone: 954-332-2380
                 Facsimile: 866-594-5731

                 *Attorneys for Plaintiffs*